IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **RICHARD CROUCH, et al** ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | CV 06-PT-1646-M |
| ) | |
| **CITY OF GADSDEN, ALABAMA** ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

This cause comes on to be heard on Defendant's Motion to Reconsider the Court's Order Granting Plaintiff's Second Motion and Notice to Amend Complaint and Incorporated Memorandum of Law filed on January 9, 2007 and on Plaintiffs' Motion to Remand filed on January 9, 2007.

**Facts**

A summary of the pertinent undisputed facts are as follows.[1]

The plaintiffs (were) (are) policemen (woman) in the City of Gadsden, Alabama (City). At the time of their respective hires, the plaintiffs were advised by the City that they were covered by Social Security and that appropriate Social Security withholding deductions would be made from their pay and that the City would pay a like amount of FICA taxes.  These deductions

---

[1] The facts as found are for the purpose of considering the subject motions only, certainly not on the merits. It is not the intention of this court to bind the state court on any issue. Whether the plaintiffs are bound by any statements, action or conduct will be up to the state court.

1

and payments were made for a number of years.

At some point, the City learned that the plaintiffs were not eligible for Social Security retirement benefits and later so advised the plaintiffs and ceased collecting and paying said amounts. The City does not dispute that the plaintiffs are ineligible to accrue Social Security credits based on their present City employment.

The federal government has now agreed to refund payments for three years and to allow the earlier payments to be credited to the plaintiffs toward the calculation of Social Security retirement benefits. No payments made during or after the refund period will be so credited.

The main present issue is whether this court has ever had subject matter jurisdiction of this action or would have subject matter jurisdiction if the subject amendment is allowed.[2]

## Defendant's Positions and Court Comments

The defendant's primary *present* argument apparently is that this case "involves a Social Security § 218 agreement reached between the federal government and the State of Alabama.". . . "Plaintiffs in this case are claiming The City behaved 'negligently and wantonly' by (i) determining (erroneously) that Plaintiffs were not excluded from Social Security coverage under the terms of the State of Alabama's 218 agreement (and could therefore be treated for Social Security purposes, like any other city employee not participating in the Policeman's and Fireman's Retirement Fund) and then (ii) by allegedly 'misrepresenting' same to plaintiffs." Defendant continues, "One such federal question remaining is whether, under federal law, a private party can recover damages (be they for past taxes withheld or paid to the federal

---

[2]For further discussion see recorded hearing held on January 17, 2007.

government *or* for future retirement credits) because a municipality created under state law did not accurately follow a state's § 218 agreement with the federal government. *Without the state's agreement with the federal government (allowing certain municipal employees to be covered by Social Security) and without the City's failure to follow that agreement, no one disputes that Plaintiffs would have suffered no damages.*"[3]

The defendant further interjects a rather obvious "red herring." Defendant argues, "Plaintiffs' Reply misconstrues the basis for removal set forth in the City's Notice of Removal filed five months ago;" . . . . . ."Plaintiffs complaint . . . . is one of those rare cases in which the '*right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties*.'" The defendant continues, "To give one example, Plaintiffs are asking the Court to find that FICA taxes which the City, as employer, paid to the federal government were from Plaintiff Richard Crouch's deposition testimony, a 'contribution on behalf' of any employee, intended for the employee's benefit." This court summarily rejects this semantical overkill. It is not a plausible basis for a *substantial* federal question.[4] It is insignificant in this case.

Another purported federal question argued by the defendant is that the plaintiffs seek a return of any refunds obtained by the City through refunds of federal taxes. This court fathoms no substantial federal question arising from this claim. The federal government has no

---

[3]The § 218 agreement is not specifically mentioned in defendant's Notice of Removal "Grounds for Removal."

[4]While it is indisputable that FICA deductions and payments are taxes, a reference to them as "contributions" does not raise a substantial, relevant federal question. For another arguable immaterial semantical lapse, *see McDonald v. Southern Farm Bureau Life Ins. Co*., 291 F.3d 718, 723 (11th Cir. 2002) ("The purpose of the Federal Old Age Benefits of the Social Security Act is to provide funds through contributions by employer and employees . . . . "; *citing Soc. Sec. Bd. v. Nierotko*, 327 U.S. 358, 365 (1946)).

substantial interest in whether these refunds are passed on to the plaintiffs. The state government may have such an interest.[5] The court sees no difference in such a claim and any other unjust enrichment claim.

The specific purported federal questions to which the defendant alludes in its Notice of Removal include:

> 10. Even if, as Plaintiffs here allege, the City was mistaken when it informed Plaintiffs that they owed Social Security Taxes and withheld these taxes from Plaintiffs' wages (*see* Compl., ¶ 13), the Court would still have federal question jurisdiction over Plaintiffs' claims. *See Brennan v. Southwest Airlines Co.*, 134 F.3d 1405, 1409 (9th Cir. 1998) (finding state law claims to recover federal taxes collected by an airline but not, in fact, authorized by federal statute removable.) Actions by employees against employers to recover federal income taxes withheld from wages are removable under federal question jurisdiction. *Bright v. Bechtel Petroleum, Inc.*, 780 F.2d 766, 769-70 (9th Cir. 1986); *Chandler v. Perini Power Constructors, Inc.*, 520 F.Supp. 1152, 1153-55 (D.N.H. 1981).

The defendant fails to note that in *McDonald*, *supra*, the Eleventh Circuit cited, with approval, a Seventh Circuit case as follows:

> Our conclusion is consistent with the holding of the Seventh Circuit that "[e]mployees have no cause of action against employers to recover wages withheld and paid over to the government in satisfaction of federal income tax liability." *Edgar v. Inland Steel Co.*, 744 F.2d 1276, 1278 (7th Cir. 1984). No other circuit has addressed this issue in a published opinion, and no circuit has explicitly applied the *Cort* test to FICA.

291 F.3d at 726, n.2.

. . . . .

Paragraph 12 in the Notice of Removal is a red herring. Any purported questions have

---

[5] The court will later discuss the *McDonald* case which provides support for this conclusion of the court. As will be discussed, *McDonald* and *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804 (1986) make it plain that not all tangential involvements with the federal government raise substantial federal question issues.

been answered in *McDonald*.

. . . . .

Paragraphs 13, 14, 15 and 16 of said Notice are also red herrings. They have all been answered by *McDonald* and are insubstantial issues.

. . . . .

Paragraph 17 is overly general and insubstantial.

. . . . .

In Paragraph 18 and elsewhere, the defendant cites *Eatmon v. Bristol Steel & Iron Works, Inc.*, 769 F.2d 1503, 1517 (11th Cir. 1985). *Eatmon* predates *McDonald* which is more specifically applicable here. It also predates *Alexander v. Sandoval*, 532 U.S. 275 (2001), and *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804 (1986). Much more persuasive than *Eatmon* is *Jairath v. Dyer*, 154 F.3d 1280 (11th Cir. 1998). This court recommends a full reading of *Jairath*. Particular attention is called to FN 11 at page 1284. *Jairath* is not only persuasive; it may be decisive. While *Eatmon* may provide some guidance, it does not control over later more specific cases. In any event, *Eatmon* is clearly distinguishable. The basis for the action in *Eatmon* was a Title VII conciliation agreement entered into pursuant to authority conferred by federal statute.[6] Defendant's late blooming reference to the § 218 agreement is not persuasive. That agreement does not require any pertinent construction. Any agreement(s) at issue are those between the plaintiffs and the defendant.

As previously indicated, the Notice of Removal "Grounds for Removal" does not make

---

[6]Defendant argues that it also involved Executive Order 11246. The case speaks for itself.

any specific reference to said "§ 218 agreement."[7]

## Conclusions of Court

This court is satisfied that this case is controlled by a consideration of *McDonald* and *Merrell Dow*.  *Grable & Sons, etc. v. Darue Engineering, etc.*, 545 U.S. 308 (2005) is so fact intensive as to be of little significance here.  *Grable*, like many other cases, emphasizes that cases where Congress has not provided for a private cause of action must turn on *substantial* questions of federal law before they implicate removable federal question jurisdiction.[8]  The federal question in *Grable* was obvious and compelling, and, thus, substantial.[9]  *Grable* notes that the "somewhat generous statement" in *Smith v. Kansas Title & Trust Co.*, 255 U.S. 180, 199 (1921) which says that a state law claim could give rise to federal question jurisdiction so long as it "appears from the [complaint] that the right to relief depends upon the construction or application of [federal law]" has been subject to "some trimming."  *Id.* at 313.  *Grable* states that later cases recognize that the mere need to apply federal law in a state-law claim will [not] suffice to open the "arising under" door.  Further, that "federal-question jurisdiction over state-law claims" is "confined" "to those that "really and substantially  involv[e] a dispute or controversy respecting the validity, construction or effect of [federal] law."  *Id.* at 313.  *Grable* further states that the federal issue must be "actually disputed."  *Id*. at 314.  Further, the issue in *Grable* involved an essential element of the claim where there was a "strong" federal interest.  *Id*. at 315.

The following excerpts from *McDonald* are controlling:

---

[7]The complaint attached to the Notice of Removal does refer to it.

[8]There is no dispute that there is not a private cause of action here.  This court's decision is premised on both no cause of action *and* no substantial questions of federal law.

[9]The interest of the federal government in conducting valid sales for taxes is apparent.

>...Because FICA is silent as to whether an employee can sue his employer for the proper payment of FICA taxes, and because nothing in the language, structure, or legislative history of FICA creates by implication a private cause of action, we conclude that the district court properly dismissed McDonald's action and therefore affirm.

291 F.3d at 721.

. . . . .

>An analysis of the *Cort* factors makes it abundantly clear that no private cause of action may be implied from the language, structure, or legislative history of FICA. First, there is no basis on which to conclude that FICA was enacted for the especial benefit of employees like McDonald.[10]

291 F.3d at 723.

. . . . .

>...Notably, an employee who qualifies for Social Security benefits receives those benefits regardless of whether his employer has complied with the requirements of FICA. As the district court noted, as long as an employee's wages are properly *reported* to the Internal Revenue Service ("IRS"), he will receive Social Security benefits even if the employer has completely failed to pay its share of the FICA excise tax. *See* 42 U.S.C. § 413(a)(2)(A)(ii) (establishing procedure for determining worker eligibility for Social Security based on time worked and wages paid). Simply put, an employee's ability to collect Social Security is in no way dependent on his employer's compliance with FICA. Thus, there would be no need for an employee to sue his employer under FICA in order to collect the Social Security funds designed for his especial benefit.

291 F.3d at 724.

It should be noted that the *McDonald* holding came in the face of its recognition that:

>Congress has established a comprehensive regulatory scheme including numerous administrative procedures that allow individuals in McDonald's position to seek relief. First, an aggrieved party can file with the IRS a Form SS-8, "Determination of Employee Work Status for Purposes of Federal Employment Taxes and Income Tax Withholding," which allows the worker to obtain a

---

[10]Thus, this latter issue is no longer disputable nothwithstanding the defendant's suggestion that it may be.

7

> determination from the IRS as to whether he is an employee or independent contractor for tax purposes. Second, if necessary, the complainant can file with the IRS an administrative claim pursuant to 26 U.S.C. § 6511(a) for a refund of self-employment taxes that he allegedly overpaid. Finally, the taxpayer can sue the government for a refund of his taxes pursuant to 28 U.S.C. § 1346(a)(1).

291 F.3d at 725.

It is particularly noteworthy that federal law might determine whether a person is an independent contractor or employee, one of the issues in *McDonald*. This court fully recognizes that *Grable*, nothwithstanding *Merrell Dow*, holds that the absence of a private right of federal action is not controlling with regard to the federal question doctrine there discussed. It does suggest that it is a significant factor.

    The following statements in *Merrell Dow* are pertinent.

> "[A] defendant may remove a case only if the claim could have been brought in federal court ... ."

478 U.S. at 808.

. . . . .

> There is a "long-settled understanding that the mere presence of a federal issue in a state cause of action does not automatically confer federal question jurisdiction."

478 U.S. at 813. Also see n.11 at 813.

. . . . .

    Footnote 12 beginning at page 814 of *Merrell Dow* makes several interesting points. First, it emphasizes that the nature of the purported federal interest is significant. It is further significant whether federal law is "directly drawn" into question [such as in *Grable*]. Further, it is significant that state law overwhelmingly predominates. In this case no federal law is drawn into question and

state law predominates.  At page 816, the Supreme Court notes that it can still have jurisdiction to review state court proceedings even if there is no original federal court jurisdiction.

This court notes that there may appear to be a conflict between the last paragraph of the majority *Merrell Dow* opinion and the *Grable* opinion, although *Grable* disavows such a conflict.  It does suggest that *Merrell Dow* is to fully apply except in obvious cases such as *Grable* where the federal law is "directly drawn" into question.

The essence of the plaintiffs' claims, at all stages, has been that the defendant breached various state contract, tort, etc. laws. The fact that federal law may have some slight bearing does not create *substantial* federal question(s).  As *Grable* states, *Merrell Dow* explained "that questions of jurisdiction over state-law claims require careful judgments '...about the nature of the federal interest at stake.'" This court's judgment is that there are no substantial federal interests at stake.

The following portion of one of the defendant's briefs is an example of the stretch to establish a substantial federal question:

> a..  Despite this change and Plaintiffs' re-writing of paragraph 26 in their Second Amended Complaint to make their allegations of "unjust enrichment" more vague, the deposition testimony of Plaintiff Richard Crouch confirms that Plaintiffs are seeking to recover an alleged "matching contribution" based on federal employment taxes the City believed (albeit mistakenly) that it was obligation to pay to the federal government:
>
>> Mr. Coleman, I don't know whether the City ever used the word "tax" or "contribution."  I can't tell you the specific words that were used, but I believe my understanding and the City's understanding was that 6.2% of my salary was being matched as **a benefit to me** or as an eventual benefit to me.
>>
>> . . .

> What I am saying is that the City presented me with a compensation package that included the City matching 6.2 percent of my salary as **a benefit to me**, and that the City has not cancelled that benefit.

(Crouch Depo., at 113 & 116, attached hereto as Ex. A; emphasis added). In fact, when asked about the basis for "unjust enrichment" claim, Chief Crouch specifically explained: "There's the clear implication there that the City can get **their contribution on our behalf** back returned to them." *Id.* at 149, attached hereto as Ex. A; emphasis added).

  b. The question therefore raised by Plaintiffs' purported state law claim is whether those FICA taxes the City, as an employer, paid to the federal government were, per Chief Crouch's deposition testimony, a "contribution on behalf" of an employee, intended for the employee's benefit–or whether FICA taxes were paid to the federal government to raise revenue, intended for the benefit of the federal government.

What *possible substantial* federal interest of any significance does this create in this case?[11] The most significant interests at stake are:

  (1) Whether there is a state remedy to recover arguably wrongfully withheld taxes, and whether state law would allow both recovery of taxes *and* retirement benefits.

  (2) Whether mistaken representations, etc. of retirement benefits coverage allow for claims for retirement benefits? Are such claims ripe prior to the time for retirement has arrived?

  (3) Whether mere mistakes of law can be considered negligent or wanton.

  (4) Whether a representation as to a future condition creates a cause of action for fraud if not known to be false.

  (5) Issues of reliance.

  (6) Etc.

All of these are state law issues, none of which involve a substantial federal question as

---

[11]*Compare Jairath supra*, where the federal interest is arguably more apparent.

an essential element.

"On a motion to remand, the removing party bears the burden of establishing jurisdiction." *Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996). While the plaintiffs have waived any procedural deficiencies regarding removal, subject matter jurisdiction issues can be raised at any time.[12] The court concludes that this court does not have and has never had subject matter jurisdiction. Assuming, however, that it once did have jurisdiction and that the latest amendment is necessary to deprive the court of that jurisdiction, the court notes that the defendant has argued that this court "has discretion to retain jurisdiction even after amendment eliminating federal claims from the fact of the complaint." If said discretion is applicable, the court, in its discretion, concludes that the case should be remanded. Defendant says that "The court should weigh economy, convenience, fairness and comity." The defendant then notes that substantial discovery has been taken. That discovery will still be available in state court. "Comity" is in favor of remand because state law predominates. There is nothing unfair about a remand. The Motion for Rehearing will be **DENIED**. The Motion to Remand will be **GRANTED**.[13]

This the 30th day of January, 2007.

_____
**ROBERT B. PROPST**
**SENIOR UNITED STATES DISTRICT JUDGE**

---

[12] And must be raised by the Court.

[13] There may be a question as to whether this court ever had jurisdiction to grant a motion for leave to amend. If so, the motions can be re-filed in state court.